# IN THE SUPREME COURT OF THE STATE OF NEVADA

MARKIECE PALMER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 67565

FILED

JAN 2 5 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of child abuse, neglect, or endangerment with substantial bodily harm, and one count of murder. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

Following a five-day jury trial, appellant Markiece Palmer was convicted of killing his wife's seven-year-old son, Roderick Arrington, Jr. (RJ). During the beating that ended RJ's life, Palmer picked RJ up and violently shook him inches from a bedroom wall. RJ's head hit the wall with enough force to leave a hole, immediately following which RJ stated that he felt like he was going to throw up and proceeded to pass out. Palmer and his wife, Dina, did not seek medical assistance for RJ until the following morning, despite unsuccessful attempts to revive him. Upon arrival of medical personnel, RJ was rushed to the hospital where nurses noted injuries on his arms, legs, back, sides, abdomen, and buttocks. Dr. William Smith subsequently performed a decompressive craniectomy, removing a third of RJ's skull so his brain could expand from the pressure. Two days later, RJ was declared brain dead with the cause of death blunt force trauma to the head. Palmer was subsequently charged and convicted of two counts of child abuse, neglect, or endangerment with substantial bodily harm and one count of murder related to the death of RJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

18-03657

*Lesser-included offense jury instructions*

On appeal, Palmer first argues that the district court erred by rejecting lesser-included offense jury instructions on involuntary manslaughter, second-degree murder, and "attempt crimes" because there was evidence RJ's death was an accident. We disagree.

"This court reviews a district court's decision to issue or not to issue a particular jury instruction for an abuse of discretion." *Ouanbengboune v. State*, 125 Nev. 763, 774, 220 P.3d 1122, 1129 (2009). If the district court erred, this court conducts a harmless error analysis. *Cortinas v. State*, 124 Nev. 1013, 1023-24, 195 P.3d 315, 322 (2008). We have previously held that "a defendant is entitled to a jury instruction on a lesser-included offense 'if there is any evidence at all, however slight, on any reasonable theory of the case under which the defendant might be convicted' of that offense." *Rosas v. State*, 122 Nev. 1258, 1264-65, 147 P.3d 1101, 1106 (2006) (quoting *Lisby v. State*, 82 Nev. 183, 188, 414 P.2d 592, 595 (1966)), *abrogated in part by Alotaibi v. State*, 133 Nev., Adv. Op. 81, 404 P.3d 761 (2017). However, an instruction is unnecessary if the State "has met its burden of proof on the greater offense and there is no evidence at the trial tending to reduce the greater offense." *Id.* at 1265, 147 P.2d at 1106 (quoting *Lisby*, 82 Nev. at 188, 414 P.2d at 595).

We first conclude that Palmer was not entitled to an involuntary manslaughter jury instruction. During trial, Palmer requested an involuntary manslaughter instruction based on the theory that RJ's killing was an accident. The district court denied this request because the only evidence supporting the request were statements by Palmer himself and the inconsistent testimony of Dina, which she later admitted was a lie. Thus, a lesser-included offense instruction was not warranted because the evidence presented supported only a theory of intentional child abuse.

*Graham v. State*, 116 Nev. 23, 29, 992 P.2d 255, 258 (2000) (holding it is unnecessary to give jury instructions for involuntary manslaughter "when proofs in the case can only support a theory of guilt described within one of the specifically enumerated categories set forth in NRS 200.030(1)," because if the killing is done with malice and in an enumerated manner, it is necessarily first-degree). We therefore hold that the district court did not abuse its discretion by denying Palmer's request for an involuntary manslaughter instruction, and to the extent it may have, such error was harmless given the weight of the evidence.

Palmer also claims the district court erred by failing to sua sponte instruct the jury as to second degree murder and "attempt crimes." However, "[f]ailure to object to or request a jury instruction precludes appellate review, unless the error is patently prejudicial and requires the court to act sua sponte to protect the defendant's right to a fair trial." *Bowman v. State*, 132 Nev., Adv. Op. 74, 387 P.3d 202, 206-07 (2016) (quoting *McKenna v. State*, 114 Nev. 1044, 1052, 968 P.2d 739, 745 (1998)). Like the involuntary manslaughter instruction, Palmer presented no credible evidence to support a second degree murder or attempt jury instruction. *See Allen v. State*, 97 Nev. 394, 398, 632 P.2d 1153, 1155 (1981) ("The test for the necessity of instructing the jury is whether there is any foundation in the record for the defense theory."). Instead, the evidence overwhelmingly demonstrated that RJ was killed as a result of child abuse, not an accident. We therefore conclude that there was no evidence of a patently prejudicial error entitling Palmer to alternative jury instructions.

*Felony murder jury instruction*

Palmer also claims that the district court improperly instructed the jury as to felony murder because the prosecutor misstated the law and confused the jury. Specifically, Palmer argues that "[t]he jury was

instructed that certain types of murder carry with them conclusive evidence of malice aforethought," including death by child abuse, allowing the jury to potentially convict Palmer even if they believed RJ's death was not caused by child abuse. The State responds that Palmer's claim is meritless because the jury instructions mirror relevant Nevada statutes and did not give any indication that a murder conviction could stand if the jury thought the abuse was accidental.

The jury instructions were reviewed, agreed upon, and not objected to by Palmer at trial. Where "a defendant's counsel has not only failed at trial to object to jury instructions, but has agreed to them, the failure to object or to request special instructions precludes appellate consideration" absent a showing of plain error. *Bonacci v. State*, 96 Nev. 894, 899, 620 P.2d 1244, 1247 (1980). The jury instruction at issue, number 7, states, "Murder of the first degree is murder which is committed in perpetration or attempted perpetration of child abuse. Child abuse means physical injury of a non-accidental nature to a child under the age of 18 years." This follows NRS 200.030(1)(b), which states that murder in the first degree is murder which is "[c]ommitted in the perpetration or attempted perpetration of . . . child abuse." Additionally, the second sentence of jury instruction 7 (defining child abuse) is an exact mirror of NRS 200.030(6)(b). Jury instruction 7 is an almost direct quote of the NRS and is thus a correct statement of law. Moreover, the jury instruction states that abuse must be "non-accidental" and that death must occur during the "perpetration or attempted perpetration" of child abuse. We therefore conclude that the district court did not improperly instruct the jury as to felony murder.

*Adverse witness*

Palmer further contends that the district court erred by allowing the State to call Dina as an adverse witness and ask her leading questions. NRS 50.115(4) permits a party to call adverse witnesses and ask leading questions. Additionally, NRS 50.115(3)(a) allows leading questions on direct examination with the court's permission. Moreover, "[w]hether leading questions should be allowed is a matter mostly within the discretion of the trial court, and any abuse of the rules regarding them is not ordinarily a ground for reversal." *Leonard v. State*, 117 Nev. 53, 70, 17 P.3d 397, 408 (2001) (quoting *Barcus v. State*, 92 Nev. 289, 291, 550 P.2d 411, 412 (1976)).

We conclude that evidence in the record indicated that Dina was in fact adverse to the State's position. *See Rodriguez v. Banco Cent. Corp.*, 990 F.2d 7, 12-13 (1st Cir. 1993) ("A 'hostile' witness, in the jargon of evidence law, is not an adverse party but a witness who shows himself or herself so adverse to answering questions, whatever the source of the antagonism, that leading questions may be used to press the questions home."). Specifically, Dina was Palmer's wife, she repeatedly participated in beating RJ, she was a named co-defendant prior to accepting a plea deal with the State, and she continually maintained that RJ's killing was accidental. As such, we hold that the district court did not abuse its discretion in naming Dina an adverse witness and allowing the State to ask leading questions.

*Jury questions*

Palmer also argues that the district court improperly allowed the jury to ask two questions concerning whether he smoked marijuana. We disagree.

"[W]hether to allow and how to implement juror questioning is committed to the discretion of Nevada's trial courts." *Knipes v. State*, 124

SUPREME COURT
OF
NEVADA

(O) 1947A

5

Nev. 927, 935, 192 P.3d 1178, 1184 (2008) (citing *Flores v. State,* 114 Nev. 910, 913, 965 P.2d 901, 902 (1998)). Resulting trial errors are reviewed for harmlessness based on whether they "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 937, 192 P.3d at 1184. Once again, Palmer failed to object at trial and thus, this court reviews for plain error. *Grey v. State,* 124 Nev. 110, 120, 178 P.3d 154, 161 (2008) ("'Failure to object below generally precludes review by this court; however, we may address plain error and constitutional error *sua sponte.*'").

NRS 48.045(2) forbids the admission of prior bad acts to show that a person acted in conformity with his or her character on a given occasion. This court concluded in *Petrocelli v. State* that the district court must hold a hearing, outside the presence of the jury, before the presentation of potentially prejudicial evidence. 101 Nev. 46, 51-52, 692 P.2d 503, 507-08 (1985). Here, the district court allowed two jury questions concerning marijuana, the first asking whether Palmer smoked marijuana with Dina and the second asking if Palmer smoked marijuana on the night RJ died.

We first conclude that the question concerning Palmer's alleged drug use on the day RJ died is relevant to show voluntary intoxication, as opposed to a prior bad act, and was therefore permissible. NRS 193.220; *Andrade v. State,* 87 Nev. 144, 145, 483 P.2d 208, 208 (1971) ("[V]oluntary intoxication, though not an excuse for crime, may be considered in determining intent."). Second, we conclude that while the failure to conduct a *Petrocelli* hearing regarding Palmer's marijuana use, generally, was an error, such error was harmless. The question, which arguably elicited testimony that Palmer engaged in the "bad act" of smoking marijuana, was harmless in light of the substantial evidence showing RJ's abuse. We

therefore conclude that Palmer has failed to show actual prejudice or a miscarriage of justice.[1]  Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

cc:   Hon. David B. Barker, District Judge
      James J. Ruggeroli
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk

---

[1]We have considered the parties' remaining arguments and conclude they are without merit.